Good morning, I'm Mr. Moran for the appellant in this matter. I believe there are three potential issues, and before I state anything, I would absolutely invite questions from the panel. I think, at least from my part, and I can't speak for my colleagues, I would like to spend some time on the clearly established question, whether the right to overrule, that the right to confrontation overrides state privilege law is clearly established. I think that's your position, and I'd like you to discuss that point. Thank you, Your Honor. Not necessarily in first or in this order, but at some point I'd like to spend a little time discussing that. I will address that. Counsel, I don't know if you've had a chance to read this case today, but it came down from the Supreme Court, Morisons v. Knoll, and it addresses the clearly established standard in particular. It just came out today, so I know we can fault you for not looking at it, but we may have to require a supplemental briefing on that. And I will have no problem, and I will try to address the issue the best I can without reviewing that case as of today. It is my belief in this particular case that we are dealing with law that has been well clearly established. We have two issues here. One, does a State statute yield to the Constitution? That's what we were talking about. Counsel, that's pretty broad. Is your best case most closely in point Davis v. Alaska? Well, Davis v. Alaska really deals with the cross-examination issue. I don't know if that absolutely deals with the State statute aspect. But I know it's broad, but it's established in our laws. And what difference does it make which privilege it is, which State statute it is, that we should have the U.S. Supreme Court have to make a ruling on each and every State statute before we say it's clearly precedent? I think that's why Judge Kleinfeld asked you, you know. I think that's why Judge Kleinfeld asked you to narrow it down to your best case. What's your best Supreme Court case? That would take me ñ I don't ñ as far as a best case citation on it. Here's the problem. And, again, I'm actually looking at the decision. Maybe it is Davis, but I'm not ñ no, I don't think it is. You're not certain? It will take me a few minutes to find the exact case on it, because I thought it was clearly established and I felt that the opinion on Murdoch v. Castro 1 goes into that very well. Absolutely. Well, would you concede that there isn't a specific case that says that the attorney-client privilege yields to the Confrontation Clause? Yes, I would concede that. Okay. So you're arguing more that the principles in the other cases. Moses 2, the second Moses case, are you familiar with that? I'm sorry, I didn't hear what you said. Moses 2. No, I'm not going to say that. Okay. That ñ well, I guess what I was going to ask you, whether you thought that that helped your argument in terms of setting out that it's the legal principle, if you don't have to tailor and modify it, that tells us whether something's clearly established. I would agree with that concept. I think what we're looking for is precedent for courts to consider, to follow from our trial courts all the way on up. How difficult is it for a court to interpret a State statute versus the Constitution? Well, I guess EDPA ñ I guess what I'm struggling with, and I don't have an exact answer, but it would seem that EDPA didn't want Federal courts, you know, second guessing State courts unless there was clearly established Supreme Court precedent. So what does clearly established Supreme Court precedent? Does it mean that you can argue all the cases where a privilege has yielded to the confrontation clause, even though they haven't dealt with that specific privilege, or do we have to wait until the specific ñ there's a case on the specific privilege? And I don't ñ you know, I don't see that there's an exact answer, so I think that's why this is an interesting case. Exactly. And I believe ñ I believe that it is every State statute. I'm going further than just privilege. Counsel, I don't really understand the emphasis on the State statute. It seems to me that where I have to start is 2254d. And the State court decision has to be contrary to or an unreasonable application of constitutional law clearly established by a Supreme Court, not a court of appeal, holding, not dictum. And as Judge Tashima said, that's why I asked you about Davis. And it doesn't really matter if it's a statute or a common law privilege or a court rule or what. I'm trying to figure out why what the State court did was clearly contrary to or an unreasonable application of something. Okay. All right. Let me ñ I'm going to have to go in a different way, but to give you a little bit of patience. In my mind, this case really deals with the right to cross-examination. Why? The attorney-client privilege right here, if it really was an attorney-client privilege right, which I still have an extreme problem with, because that letter was addressed to two attorneys, Mr. Murdoch's attorney too, and that's huge. So what do we have? We have the attorney-client privilege being utilized so that somebody cannot have a complete cross-examination. Did you move in to strike the testimony of DiNardo when you were unable to cross-examine him? I was not the trial lawyer. Well, I don't mean you personally. I mean, did Murdoch say, gee, since I can't get the letter, I want to strike DiNardo's testimony? No, because I don't think it rose to that level. And that's a question that I've asked myself many times. And putting myself in the shoes of trial counsel, trial counsel didn't know what was in the letter. Well, then he said, well, but I can't get the letter. I can't cross-examine him. My remedy is to have the testimony stricken. And I'm kind of hung up on what do we do about the fact that Murdoch didn't request that. Okay. He simply asked for the letter and he didn't get the letter. Are you sure that Murdoch's lawyer got the letter? You said it was addressed to two lawyers. Yes. He did not get the letter. It was addressed to two lawyers, though. The letter was given to Mr. DiNardo's first counsel, Mr. Starr, not the attorney who was representing him at the time of Murdoch's trial. On the envelope, and I think the magistrate clearly stated this in his reporting recommendation, it is addressed to Mr. DiNardo's attorney and to Mr. Murdoch's attorney. There was never a ---- But it never got to Murdoch's attorney? No. And he was trying to get to it. And my question was, since he asked for the letter and didn't get the letter, he should have said, well, I can't cross-examine DiNardo. DiNardo should be, his testimony should be stricken. If I may look and possibly answer that question, because I do think that's a huge issue and I don't have the exact answer on that. I believe what he asked for was a continuance. I know that he asked to have the judge recluse on the matter at that point. He did ---- So why doesn't his confrontation claim fail just by virtue of not having asked to have the testimony stricken? The question is because the point of the matter was he still had to go forward and he doesn't know if the contents of the letter is going to help him at all. We're trying to look at a trial counsel, try to figure out what's in his mind. He's got no clue what the letter is. The court's got control of the letter. The court's not letting him know what's in there. So he doesn't know if it's material or not. So now we're asking to second-guess him as we've all learned what the contents are in the letter when he doesn't. So he is assuming it's material. He doesn't know if it's material. What's his basis of asking for Nardo's testimony to be stricken when he doesn't know? He can't process it. He can't examine it properly. That's what you're claiming, isn't it? It is what I am claiming. It is. I can't confront him. The man can't testify. But I don't see where you're ---- where Murdoch ever made that argument. I'm not going to ---- Why isn't your answer ---- why isn't your answer the question if the State court wished to use that kind of procedural default, it would be entitled to, but there was no ruling on the State court's part to that by failing to request a striking testimony, the point was waived, was it? I don't think ---- you see, I don't think it is waived because ---- The State court actually ruled on this issue on the merits. Right. The court ---- I thought you said we're not going to rule on it because you didn't ask for the testimony to be stricken. Exactly. And that would have been the time for it. And it was never, it was never the State court or the trial court saying anything other than to go forward. I mean, this is the first time this issue has ever been brought up. I'm not going to say that I don't consider it, but the point of the matter is it's very hard to put yourself in the shoes of trial counsel with the idea he doesn't know what's in the letter. And he doesn't know if he's getting complete or confrontation at all. He's trying to find out. The reality is the State knows. You're allowing the State to have a benefit here because the State either knows by the trial judge or I still believe that the State, the prosecuting attorney, knew what the contents were in that letter and they had the ability of finding out. Counsel, I'm troubled by your saying what you said just a moment ago, that defense counsel had no idea what was in the letter. I'm looking at supplemental excerpts 109 and 110. The prosecutor says, before we bring the jury in, I have one more thing to inform the court in Mr. Peacock, Mr. Peacock's defense lawyer. He says, I was told during the course of the interview that I had with Mr. DiNardo that there was a letter that was written by Mr. DiNardo at the request and assistance of Mr. Murdock, and that during this letter, it's my understanding I've never read the letter, I've never seen the letter, nor do I have a copy of the letter. But Mr. Fuller indicated he did not have this complete file with him, but that the letter, I guess in sum and substance, stated that Mr. DiNardo was coerced by the police into implicating Defendant Murdock in this crime. So it seems to me that since the defense lawyer was right there when the prosecutor disclosed that the letter said DiNardo was coerced by the police into implicating Murdock, that defense counsel indeed knew that that's what the letter said. He didn't know the level of certainty that he would if he'd been able to read the letter, but he knew to the level of certainty that the prosecutor's disclosure was worth. It turned out to be true, of course. I don't think that's a critical part of the letter. Why isn't that critical? It seems to me that based on that, in addition to asking Murdock about whether he'd made inconsistent statements that he wasn't even in the bar, he'd never been in that bar in his life, he also could be cross-examined. Didn't you write a letter where you said the police coerced you into implicating Murdock in this crime? Okay. Let me answer. You've got two questions there I want to answer them both. The first one is the coercion is not the critical part of the letter. What's in there is I never committed a crime. Well, the implication, though, of the coercion is that he was coerced into making a false statement, not a true one. But we are trained from law school. Never ask a question you don't know the answer to. So what happens if trial counsel asks the question, you created a letter, you wrote a letter that you were first. Now you're talking tactics. And on tactics, I can see it a couple of different ways. I mean, frankly, I can imagine from a tactical point of view not wanting the jury to know about the letter exonerating Murdock because the inference would not be that Murdock's innocent, but rather that Murdock is such a scary guy that he was able to threaten DiNardo and scare him into writing this letter for him. With all due respect, I don't agree with that concept. The letter was the fulcrum that trial counsel needed to open the doors. If he had had the letter and merely had confronted DiNardo with it, say, you've said here that you never committed any crimes with Mr. Murdock, maybe DiNardo denies the statement, but it is his facial expressions, his eyes, everything else, the things that we don't get on the record, that every single day a jury makes the decisions on. The bottom line is that I can just go back to the standard of review and ask you a question. If I look at the State court of appeals decision, it appears that it was predicated on a State evidentiary issue, attorney-client privilege, and it doesn't reference the confrontation clause. So the last reasoned decision of the State court rests, it appears, not on a constitutional basis, but on an evidentiary basis. Does that in any way change in your view the standard of review here? No. First of all, the Sixth Amendment was raised by Petitioner at every stage in this proceeding. This was a denial. Do you want to step back? My question wasn't whether it was raised, because it was. My point was, and the question goes to the fact that the California court of appeals did not make this decision on any constitutional basis, even though your client raised it in the State court. My question to you is, does that change anything in your view? No, because I don't think that's the standard. As long as the State courts were given the opportunity to standard review. No, the question is standard of review. Let's just step back. Your client raised it, tells the California court of appeals, I would like to have you consider my confrontation clause issue, my constitutional issue. The California court of appeals, as sometimes happens, didn't happen to decide that issue. It was raised. Instead, as I read it, and maybe you read it differently, it only addressed a State evidentiary issue. So it didn't even go to the constitutional issue. So my question, then, is when we have that kind of a procedural posture, what does that do under AEDPA? Do we then not have the same kind of deference because we don't have the State court putting its decision on a constitutional basis? Well, then what you have is you have no deference to the State court. If the State court has chosen not to deal with an issue that was raised in front of them, then you have no deference. And I think that the opinion on Murdoch- Isn't that advantageous to you, if that were the case? Yes, it is. Or is it? I guess if the whole issue is whether there was, if there was clearly established Supreme Court precedent, don't we just have, isn't that a legal issue that we have to, we're going to have to wrestle with one way or the other? Well, again, we're also jumping over the point that I believe that Murdoch 1 is precedent and can't be reopened. I am addressing these issues. I believe that the only issue before this court is, was the letter material, and can we find beyond a reasonable doubt it would not have aided trial counsel. Well, but you don't really think that this en banc court is at all bound by Murdoch 1, do you? I really do. I really do. Why? What case says that? I think I cited that very well. I think your own rules, you had 21 days to do something en banc, and this is why. Well, but we now take en banc Murdoch 2 with the opportunity to do whatever we need to do to put this issue to rest. I guess I'm trying to figure out what the case is that suggests that we can't amend Murdoch 1 any way we need to. All right. Let me say it this way. All right. I deal every single day with parents of defendants that have been convicted that have waited more than one year to come to me to bring a petition under ENPA, and I have to tell them I'm sorry, but the rules are you can't raise this great issue. Now, your rules say you have 21 days, so am I hearing that you have the right to punt through your rules, but a civilian, a citizen, has to be bound by the rules? That's not fairness. Let me ask you another question, then. Do you believe when the court said what it said as to this issue that it didn't reach the issue you're now talking about, now I'm talking about the California Court of Appeals? I don't think the California Court of Appeals ever properly looked at the issue because there was no record that they ever looked at the letter. Well, there is in the California Court of Appeals decision. It suggests that the letter was given to appellate counsel to them. In other words, Murdoch's own counsel had the letter at the time he appealed. That's right in the decision. Had the ability to review it, but... But he didn't go see it? No, no, no, no, no, no. Murdoch's counsel did see it. I said review it. You said had it in their power, so maybe that's splitting hairs. I'm sorry. But as was clearly stated in Murdoch 1 very well, there was no record that any judicial officer in the Court of Appeals or at the California Supreme Court ever personally looked at the letter itself. Well, I guess I don't know whether we're bound by that, but that's not my worry. My worry, again, and my question was, I read in the California Court of Appeals Finally, Murdoch claims that even if the letter fell within the attorney-client privilege, and if the privilege was not subsequently waived, his need to discover the contents outweighed DiNardo's interest in confidentiality because the letter was directly exculpatory. It expressly contradicted the version of event which DiNardo told at trial, and at the time of his arrest with respect to the appellant's culpability. In his habeas petition, Murdoch asserts the letter did even more because it substantially exculpates the petitioner. We're not persuaded. It is pained that attorney-client privilege is not one to be easily discarded merely because a defendant asserts that invocation of the privilege results in the denial of his right to a fair trial. Now, how do I say they didn't address this issue with that language? I'm not saying they didn't address the issue on a constitutional magnitude. It was stated to me that they only did on a state issue. Wait a second. Just stop one second. The case that the Court cites is People v. Goloweski, which is a State court decision. It does not cite to a U.S. Supreme Court decision on the Confrontation Clause. I haven't read this case. Do you know whether it addresses rights under the Confrontation Clause of the United States Constitution? I can't make a clear representation on that, but it was always my idea. It seems like it's a pretty important thing to know. Well, except I've, in the Federal courts from day one, we have always raised this as a constitutional question, and it has never been stated that we did not raise it in the State court. And I, we all know that the State comes out petitioning vigorously on the issue that, gee, you're raising an issue that was not raised in the State court. And so we're not bound by the rule. And so, you know, this is not an exhaustion issue that we're concerned about. We're concerned about whether or not the California court of appeal resolves the Confrontation Clause issue, because if it did, there may be one standard of review under AEDPA. If it did not, there may be another. I don't think this is an exhaustion argument. All right. And what is the standard if it didn't resolve it and it was squarely presented to it? That we're not bound by their we don't. We're not bound by the rule. Which subsection of AEDPA does it fall within? I believe it allows you, it allows this Court not to give it precedent. It allows this. But if we're not, that's where we get into some confusion, because, of course, if there were factual findings or whatever, we would be looking normally at deference. But if it's a purely legal issue, or is it a purely legal issue, does it matter whether or not the State court addressed the constitutional claim or not? No, I think all that matters is that it was raised. I do want to say one thing. Okay. I mean, I think you're just missing the point that we're talking standard of review, not exhaustion. Okay. But why don't you proceed with your argument? All right. Thank you. It has to be understood on the general context what happens here. DiNardo is convicted. He is facing a life sentence. He has entered into a deal to testify. If he testifies, he gets the benefit of his deal. At that point, the letter is raised. This is no different than a witness all of a sudden asserting the Fifth Amendment in the middle of testimony. This is not about attorney-client privilege. This is about the State court. Okay. So wait a second. You're not so what you're saying is if the State court decided, this is like the Douglas case. This is like a 1965 U.S. Supreme Court case which clearly established that the confrontation clause trumped the Fifth Amendment right not to self-incriminate. Right. Okay. Well, say that. I'm sorry. Otherwise, you're not making your argument clear as to we have this rubric. We have to follow. Now, if the State court didn't decide it that way, if it didn't decide it at all, then do we look at whether the State court would engage in an objectively unreasonable application of clearly established feral law? Or do we look at some other subsection? No, we can look at if they objectively looked at their State law underneath the confrontation clause that's applied to them through the 14th. The point of the matter is this was a very simple case. You had a witness who was going to testify that all of a sudden has a document that's going to impeach him that the State utilizes to their advantage because the State's hiding behind the attorney-client privilege clause that was never intended for them. And the perfect remedy was Mr. DiNardo, make your decision. Do you want to spend life in prison? You've impliedly waived your right or assert your right, which he never personally asserted, can allow a cross-examination. Counsel, I could not find in the cross where the lawyer tried in any way to get at this, even though he knew about it from what the prosecutor had told him. I looked for where the lawyer tried to get as much as he could of the letter in until he was stopped because of the privilege, and it looks as though he never asked. The judge never stopped him. And I think you conceded that before, that he could have asked about whether DiNardo had written a letter saying the police coerced him into implicating Murdoch. It looks to me as though your case is not really about a limitation on cross. Your case is about a limitation on discovery, that the defense lawyer should have been allowed to see the letter because I can't find the limitation on cross in the transcript. Okay. My position is it was a limitation on cross. I'm going to answer your questions, number one. Give me the page. I have a second to find it because I do have it in here. I'm sure you have it all marked up and tabbed. Why don't you save a minute for rebuttal, and then you can look at it while the others answer. Okay. If I could have one minute to answer your question. It's Mr. Fuller brings the letter in, gives it to the Court, the Court keeps control of it, and orders Mr. Fuller to keep it. Defense counsel is not allowed to have it. He cannot confront or cross on it because he's got no clue what's in the letter. So the no clue is, if he can't properly confront the witness, what is his remedy? If he can't confront the witness, what is his remedy? To make the record as he did. Isn't it to say he can't testify? The man can't testify. Then he can't, Denardo cannot testify against Murdoch if he can't be cross-examined. He doesn't know what's in the letter. And he clearly has asked for continuance and everything else. And what else has he asked to strike? The judge, the trial judge, who's the ultimate protector of the constitutional right at that point, he knows what's in the letter. He's not trying to strike it. Clearly, he knows. He, the judges, everything. Look, Murdoch's lawyer insisted on the privilege. The prosecutor announced what was in the letter based on what Denardo had told her. Not the point that he never committed a crime with Murdoch. That's the critical part. The coercion's not. Coercion comes out. It's that he never committed a crime. I thought your point was he can cross-examine him, but he doesn't have the letter to stick in the witness's face. The witness can lie. And then he doesn't say, you know, here you said differently. That is my point. He has no way of cross-examining. He can ask him questions, but if the witness persists in lying, there's no way he can make him out to be a liar in front of the jury because he hasn't got the letter to confront him with. That's exactly right. So what happens is he doesn't have the letter. Denardo makes a blanket statement, perjures himself, and the defense attorney's stuck out on an island and possibly even created real incompetent assistance to counsel because he doesn't have the letter to back up. But he will serve this client by being incompetent. I'm sorry. You've got two minutes left. I would like to reserve it. And perhaps you can then stop the clock. You can then no, no, you don't. You have a page or question pending that I think that Judge Kleinfeld asked. Yes, I do, Your Honor. You might want to come back to that. I just wanted to remind you that you might want to be looking for that page. Fair enough, Your Honor. Okay. We'll hear from the State now. Good morning. May it please the Court. Deputy Attorney General Rahma Maleen on behalf of Respondent. Just to quickly address Judge Ward-Lutz bringing up the case of People v. Godleski. People v. Godleski does cite Chambers v. Mississippi when deciding the attorney-client privilege issue. And Chambers v. Mississippi, in that context, they say, the right to confront and cross-examine witnesses is not absolute and may bow to accommodate other legitimate interests. And we cite that case, Chamber v. Mississippi, throughout our briefs in Murdoch I and Burnock II. Chambers, right. Now, Chambers, so your argument is that the last decision of the State did, in fact, address the confrontation clause. Yes, we argued that in Murdoch I. All right. Well, that was such a long time ago. Do you think your argument at this point is, obviously, I think we just got something that you were going to talk about Moses, but there was Moses I and Moses II. Do you think that Moses II sort of opens the door for the petitioner here in being able to argue more broadly in terms of what clearly established means? No. In fact, I believe that Moses II closes the door because Moses II talks about how it goes through the relevant United States Supreme Court president, and Mussolini. Well, I guess what I would say before Moses, you could probably better make the argument that there needed to be a specific case that dealt with confrontation and the attorney-client privilege, that, you know, when they collide, confrontation. After Moses II, is it more difficult to make that argument? Because it seems to say that we're talking about the legal principle, and so it seems to move away from there having to be an exact case. I mean, I could see that that would be, Moses II would be a more unwieldy standard for the state, for example, to handle and better for the petitioner. But I'm just trying to think that through. Without getting to the broad application of Moses, but applying it to this case, I think Moses II talks about having to take the U.S. Supreme Court president precedent, and if you take that and have to tailor or modify it, then that does not allow it to come back. So you say that Moses II doesn't prevent you from prevailing here? Not at all. But on the other hand, do you think that it allows more room for a petitioner than prior to that? Not in this case. All right. But just generally speaking, is there any room for mischief with that that didn't exist before? I would probably agree with that. Because when Moses II goes through Musladeen and it goes through Van Patten and it goes through Panetti, it comes up, it recognizes the relevant Supreme Court authority, but then it does add that additional language, which I think in this case precludes Petitioner from prevailing. But I could see how a clever defense attorney could make an argument based on it. Do you think it is clearly established that if a witness cannot be effectively cross-examined, that a defendant's constitutional rights have been violated? In this case, no. How about general principle? Vis-à-vis the attorney-client privilege? Well, if a witness cannot be effectively cross-examined, do you think the defendant's confrontation rights are violated if that witness is then allowed to testify? In this case, the accomplice, DiNardo, he was effectively cross-examined. Yeah, but that's not the premise of my question. Yeah. No, I think a witness can still testify as long as he can be cross-examined. And if he cannot be effectively cross-examined, do you think the confrontation right is violated? Not preparing to argue that. Well, wait a second. What did Douglas v. Allen say about that? Davis v. Alaska? No, Douglas. I'm sorry. I've got the wrong guy. Douglas. The Douglas case. Douglas. That was the one about the right to incrimination, so he was cross-examined but not fully. He wasn't required to confirm a particular statement. And I believe in that case that was the Douglas v. Allendale. Okay. Douglas v. Allendale. It's an A word. I think in that case the U.S. Supreme Court did recognize, and if I remember correctly, that was from 1965. 1965. That the Court did make a statement, as was indicated by the Court, that if a witness cannot be cross-examined about certain statements, the cross-examination is not effective. But I don't think that's the situation in this case. Okay. Wait a second. But it found a violation of the confrontation clause. So under this Moses II case, why doesn't that principle cover this situation? Why do we have to modify or change that principle in order for it to cover this situation? Because in this situation we're dealing with Petitioner's right to cross-examine an accomplice who on material where the accomplice asserted the attorney-client privilege. And as we've argued throughout our briefs, the attorney-client privilege should not, in this case, should not bow to appellant's confrontation rights. That, and if it did, the Supreme Court has not ruled on that issue yet. And I don't believe that Moses II would – I believe Moses II would consider that a modification or a tailoring of the prior principle, as stated in Douglas v. Alabama or Davis v. Plaza. Why isn't Crawford sufficiently in point? Excuse me? Why isn't Crawford – Crawford v. Washington? Why isn't that sufficiently in point? I mean, there you had a state marital privilege. Right. And the Supreme Court ruled right over it, you know, like a train. Just basically said it doesn't matter. So what's so different about a marital privilege and attorney-client privilege? I think that – Why doesn't Crawford stand for the clear proposition that when you have a constitutional right to confront and a state privilege, the state privilege loses every time. Why isn't that what Crawford stands for? Well, I believe that Crawford could not be applied to that case because, as the Court has indicated, that applied to the marital privilege. This case – You know, that's a very weak – Attorney-client privilege. That's a very weak answer. Listen carefully to my question, okay? And just try to answer the question as I ask it, if you can. Why doesn't Crawford – Why isn't Crawford properly or rightly saying when you have a state privilege that stands in the way or that has to be – that prevents a criminal defendant from exercising a full right to confrontation, the privilege must give way? Now, I read Crawford standing for that proposition. I'm willing to let you persuade me that I'm wrong. So tell me why that is not what Crawford stands for. Because I believe that the attorney-client privilege in this case, in this context, is not the same as the marital privilege. The attorney-client privilege – Well, of course. And our guy is not called Crawford. And the state there is West California, where – I'm sorry. The state here is California. I don't want Washington. But you know that you can't distinguish cases on immaterial distinctions like that. You can't – differences. Why does it matter that it's the marital privilege in Crawford? If that's the only distinction you can find that's of significance, why does it matter? Why is the marital privilege any different from the attorney-client privilege or the doctor-patient privilege or the penitent – what is it, penitent-priest privilege or, you know, any of the other state privileges that exist out there? Because the nature of those privileges that the Court just enunciated are different. So your view is that Crawford would have come out the other way in the Supreme Court, or might, if that had been his lawyer, not his wife. Yes. Really? Yes. Because the attorney-client privilege is to permit the free flow of information between attorney and client. DiNardo had every expectation – The marital privilege allows a free flow of information between husband and wife. And that has – So what's the difference? I don't understand. Well, the difference is the communication between husband and wife, the purpose of the communication, is different than the purpose of communication between attorney and client. I think it's more important than the free flow of communication between a client and his lawyer that those of us who think that free flow of communication between spouses is not only sort of more important, but more common and, you know, more pervasive, and that, you know, we might be able to do without attorney-client privileges, but heaven-forbid if there were no privacy of marital communications. But I would argue – What is the – I would argue in the context of a criminal trial, which this was, the purpose of the attorney-client privilege, DiNardo had every expectation when he handed that letter over to his client that the contents of that letter would not be divulged. Would you say the same thing then with the priest-penitent privilege? I mean, when a person talks to the priest, they have every expectation that it won't go any further. What would be the difference there? Again, in the context of a criminal trial, the attorney-client privilege, that's the reason why we have it in the criminal law arena, is to allow defendants to communicate with their attorneys without that information being divulged, because if it wasn't – But we don't really have the attorney-client privilege in the context of criminal law. It's a question of State of the Entry law. It's not a criminal versus civil. Do you agree with me on that? Yes, that's true. So let me ask you then, is there any kind of a Teague problem here with Crawford? We didn't raise that issue, but Teague can be with Cantor. Yes. All right. So if there's no Teague problem, then to accept your argument, to see if I'm correct, we really would need a case, wouldn't have to be called Crawford, but we would need a case to say the Sixth Amendment can trump attorney-client. We would need it that specific, in your view. Have you looked at that? I would argue that, yes. Okay. But if I may add to that, the cases cited by Murdoch I purporting to show that the U.S. Supreme Court has – this is clearly established law. It cites Oldham v. Kentucky, Davis v. Alaska. Those do talk about the right of cross-examination and confrontation, but two of those have to do with impeaching witnesses, which is not really an evidentiary privilege, and one has to do with juvenile court records, which I believe is Davis v. Alaska, and that's protection of, I guess, juveniles' rights to not have their criminal records made public. So I don't know if I would – If I could go back one step. What about the impeachment issue? Because I thought that's the whole point. Evidence is kept out. You want to use it in – someone wants to use it in a file for impeachment purposes. So I'm not sure how that is a distinction. Maybe you can help me on that. Well, in this case, the Petitioner was obviously able to impeach the matter with his prior statements. There's no problem. I think the U.S. Supreme Court decisions are clear on that, that defendants are permitted to be impeached on cross-examination with their prior inconsistent statements, and that was Olden v. Kentucky. Right. But you need the inconsistent statement to be able to do the impeachment. And they had it in this case, because DiNardo had admitted throughout his cross-examination that he had denied prior involvement in this crime. He admitted to that. So we did have – we didn't have a problem with the inconsistent statement. But, you know, then the question in the analysis is, does that go to the legal standard of whether you have clearly established law? You still might have harmless error. I mean, is that a harmless error argument you're making, or is it – We made that harmless error argument. I understand that, but I'm – but are you mixing and matching right now between the legal standard of is it clearly established, and even if it were, is it harmless? Yes. I think I was mixing and matching. Okay. I just wanted to kind of see where we are. I don't – to reassert my point, I don't think that the U.S. Supreme Court precedent – you would have to have a case that said that the confrontation clause is violated by a co-defendant's assertion of attorney-client privilege if the defendant is unable to use the material covered by the attorney-client privilege in cross-examination. What's the difference between that and the Fifth Amendment, as we had in Douglas? Well, Fifth Amendment would give the co-defendant the right not to say anything. It's just himself. Right. But we have the same – we have the same situation here, isn't it? A co-defendant's statement couldn't be used because he asserted the Fifth Amendment. Here it can't be used because of the attorney-client privilege. It's not much of a difference. But let me ask you one other question about Douglas, and maybe I'm getting to what Douglas didn't say the Fifth Amendment privilege had to yield to the Sixth Amendment. It just said the Sixth Amendment rights were violated. So if we look at Douglas v. Alabama, isn't that the end of the game? The Sixth Amendment rights were violated. Then you sent it down to figure out what the remedy is. Is the remedy exclusion of the testimony? Is the remedy that you say, will you give up your attorney-client privilege? But isn't it confusing rights and remedies when we're talking about clearly established law? In Murdoch 1, this Court found that the Sixth Amendment right may have been violated. They sent the case, remanded the case back to the district court. The district court did a thorough analysis of the letter. But that's on harmless error. I mean, in Murdoch 1, did some balancing. Let's say we don't do any balancing and we have to cast aside the privilege or not. Isn't the key question the only one, was the right violated? And then you send it back down. And then we do the harmless error analysis that we can talk about. That's a separate question. But is do we have to do any balancing with the privilege? In this case, I've been arguing that the Confrontation Clause was not violated. Whether you cite Douglas v. Alabama, Davis v. Alaska, that there is under ADEPA, looking at it through that lens, that there is no violation of the Confrontation Clause on Federal habeas. So I don't think Douglas, Alabama is the end. And you say there's no violation because the letter wasn't that exculpatory, that it wouldn't have added much? That sounds a little. I mean, is the violation question any different from the harmless error question? Help me understand what you mean when you say there was no Sixth Amendment violation here. Well, because there is some overlapping of the issues on the harmless error and the Confrontation Clause merits argument. But in this case, the Confrontation Clause was fully vindicated because Murdoch's trial counsel thoroughly cross-examined DiNardo regarding his prior inconsistencies. Yeah, but he didn't have a letter that said, you know, you just wrote a letter to your lawyer that says X. Not merely that you made an inconsistent statement to an interrogating policeman. An inconsistent statement to an interrogating policeman, a jury, I think, is going to regard somewhat differently from a letter to his lawyer. Two points. The material that was covered in the letter was cumulative of what came out on cross-examination. I understand that. But that's not the point I just made. Right. But in addition, as we argued in Murdoch I and in Murdoch II, the letter, no matter its value to Petitioner Murdoch, we believe was not a truthful statement. And as this Court has concluded, it was. Well, that's not for you to decide. No, but it was created in conjunction with Petitioner Murdoch. Petitioner Murdoch, no matter what its confrontation clause rights are, has no right to use false evidence. Now, you just said the letter was created in conjunction with Murdoch. We argued that in Murdoch I and Murdoch II. I understand you've argued that. Is there any evidence in the record to that effect? There is some evidence, yes. What's that evidence? The evidence is, as this Court pointed out in the supplemental excerpts of record, that the attorney who brought it to the attention, the prosecuting attorney who brought it to the attention. Yeah, but that's not evidence. That's lawyer talk. I read that. Okay. Is there any evidence to that effect? Yes. There was two different handwritings on the letter, which the district court stated appeared to have been then written by two different people. Now, but the only different handwriting was the name Narda that was added. Was there other different handwriting besides that? I have not seen the letter. So the only on the writing, on the outside of the envelope, it was two different writings. Also, Petitioner and Murdoch, before the preliminary hearing, were coming to court together. They were with each other. They had time to, Petitioner and Murdoch had time to force DiNardo to write this. Yeah. So in other words, you don't have much evidence. Well, we argued that the evidence showed that there was a fraud. And the, in Murdoch I, they did write a footnote to the fact that no matter what Petitioner and Murdoch's confrontation rights are, he doesn't have a right to perpetrate a fraud on the Court. And they cite Commonwealth v. I understand that. But that's not a finding of fact. That's a statement of law. Yes. So I think Judge Fletcher kind of took up where I left off about the crossover, as you've put it, between the violation and harmless error. If I were to then ask you separate, an independent standing question of why in your view this is harmless error, would there be anything to add, or would it be more confined to what you've already told us? As far as the confrontation clause, confrontation clause claim goes, I think that if you look at the district court's report and recommendation, their final, where they do a thorough analysis of the letter, that rebuts the confrontation clause claim on harmless error. But you also have, then, the additional evidence that the district court looked at regarding Petitioner's guilt in the crime, that you can look at that as well, the other evidence. There were three eyewitness identifications of Petitioner and Murdoch as being there in the robbery. Why did the trial judge feel that the prosecution's case wasn't going very well and that he, the trial judge, needed to lean on Denario to testify against Murdoch? I don't know if I would characterize it as leaning on Denardo. He gave Denardo. Well, it said, you know, things are not going well with the prosecution. And by the way, you have a life sentence. It's going to stay that way unless you come up with something new. That sounds like leaning. Do you think that's conduct appropriate for a judicial officer? Do you think that that is consistent with due process for the judge to threaten a witness with life imprisonment unless he turns state's evidence? I don't know if the – I don't remember the exact quote used by the trial court. I did look at the sentencing of Denardo, and I believe that he gave him his option. I don't know if he told him that. I did. And this is your chance to tell me that you think what the trial judge did was proper, if you want to try to persuade me of that. I thought it was highly improper. I'm reading it. But if you think differently, you can go ahead and pull the transcript and show me why it is okay for a trial judge to tell the prosecution, your case is not going very well, and tell the witness you're getting a life sentence and this is what it's going to be unless you start singing, unless you start testifying for the prosecution. And then as the jury is out on Murdoch's case, the judge changes the sentence. I mean, you could hardly script a play or a movie showing judicial bias or judicial manipulation that's any more perfect than the transcript in this case. Now, go ahead. On behalf of the State of California and Attorney General Brown, go ahead and try to persuade me that what the trial judge did here was a model for other trial judges to follow and something that is appropriate for judges in the State of California to conduct their business in criminal cases. I'm listening. Okay. First, to that point, trial courts have the – I would, if the Court would be inclined to ask for supplemental briefing on that specific question, I would gladly do briefing on that. However, I don't really care. I'm asking you, you know, it's in the transcript. It's in the file. It's – you know, if you don't want to argue that this was appropriate, I will remain with the impression I have. I don't need supplemental briefing. I read the stuff, and I think it's perfectly inappropriate and highly improper what the trial judge did here. But since you are defending the State, why don't you – you know, I'm giving you a chance to talk me out of it. I'll listen. I've got a partially open mind. I mean, partially in the sense, you know, I've already read the stuff, so I've reached some conclusion, but I'm willing to listen. So you go ahead and argue if you wish. I don't need supplemental briefing on that. Okay. I would just have to generally argue because I am not totally familiar with that portion of the record because it didn't bear on the issue in front of the Court. But I would argue that from my recollection of what transpired regarding DiNardo's sentencing, that DiNardo was presented with options that he wasn't leaned on. And trial courts – He was sentenced to life in prison, right? He was sentenced. And after he testifies, and as the jury is deliberating Murdoch's case, the judge changes his sentence down to 13 years, right? Down to 12. Yeah, 12 or 13 years. Some number like that. No dispute on that point. Yes, no. There's no dispute that the judge actually makes clear to him in so many words that the sentence is going to be life in prison or stay life in prison unless he comes up with something useful for the prosecution in the Murdoch case. Is there any disagreement on that point? Yeah. I wouldn't characterize it as such. I would characterize it – and I believe this came out during DiNardo's cross-examination – that he was given – if he testified truthfully, he would be given a sentence that was substantially reduced from the life sentence, which, as this Court has already indicated, 12 years. Was trial counsel involved? Did he hear what the judge said to DiNardo? Was he in the hearing? Did he get a transcript of it? Did he know the words that the judge used? And, you know, was he able to – did the judge inform the jury of what he had said to DiNardo before he testified? I can only infer that trial counsel did know about it. Is it on the transcript? Excuse me. Is it in the record? DiNardo's cross-examination, all that came out. Did you hear my question? Yes. I can't cite to a specific point in the record right now. Did the judge inform the jury of what he had said to DiNardo, as far as the record reflects? I don't believe the judge informed the jury. Did – was Murdoch's counsel present or given a transcript of that hearing where the judge is talking to DiNardo and telling him the good things that will happen to him if only he turns out to say it's evidence in the Murdoch case? I can only infer that because – Is it in the record? I cannot point to a specific point in the record. Can you point to a general place in the record? Yes. DiNardo's cross-examination, where Petitioner Murdoch's trial counsel, Mr. Peacock, thoroughly cross-examined DiNardo regarding his deal that he got for testifying, and – which includes the reduction of the life sentence to 12 years. And basically, he asked DiNardo – I'm paraphrasing here – if you were not testifying in this case, you would be spending the rest of your life in prison. Is that correct? DiNardo answers yes. So from that statement, I can only infer that DiNardo, Petitioner Murdoch's trial counsel was aware of that deal and what the judge had told Mr. DiNardo. Well, he was clearly aware of the deal. Whether he was aware of the pressure the judge exerted to produce the deal is another question. Yes, that would be another question. Was the judge's conduct ever challenged in this respect by the petition? Never. It was never addressed in any of the briefs, Murdoch I or Murdoch II, not even in the state trial court. Does the judge actually have any power here? I read that sentencing transcript, and the judge says, I have no choice. I have to do this under the law. You get 25 to life. I hate to do it because you've been well-behaved in the 10 years since the robbery. Nothing I can do unless the prosecutor does something. It looks like it's all the prosecutor's power, not the judge's. That's right. Is that the way the law was? The court, yeah, the court does not have the authority to give. They can implement the agreement between the prosecutor and the defendant, but they cannot make the agreement for the prosecutor and the defendant. Well, basically, the judge had no choice but to give 25 to life to DiNardo unless the prosecutor made some sort of motion before or after. That's correct. Is that the law? And that's what happened. What motion was that? I don't know about the motion, but the prosecutor did make an agreement. Well, remember, when you answer a judge's question. Yeah, I'm answering. He made an agreement with DiNardo. Did you hear Judge Planoff's question? Yes. He was asking me what the law is for that. The judge would have had to set aside the jury verdict. DiNardo was convicted by a jury, right? And so the only sentence was the 25 to life or whatever. Right. So then there had to have been some sort of motion by the prosecutor to set aside the jury verdict or something. No, but it was that if there was something that changed and the prosecutor and the district and the trial lawyer reached some kind of stipulation, he could enforce the stipulation for a lesser sentence. And that's what I find troubling because then he went on to put pressure on the prosecutor by telling him, you know, unless you do get something more, then you don't have a case against Murdoch. You need that something more. So you guys get out of here, make your deal, and then Murdoch will get a number. DiNardo will get his 13 years. That's really what happened. And that was the trial court's assessment. But as we argued in our harmless error that there was additional evidence besides DiNardo's testimony, the three eyewitnesses that I talked about, and I know that in Murdoch 1 that this Court has recognized that DiNardo's testimony was crucial, and it was an important part. But it wasn't the only other. The problem with the eyewitnesses, we go into this, but these eyewitnesses did not pick out Murdoch at the time of the crime from the books. And then we have the linkage of DiNardo's fingerprint 12 years later with the crime. No physical evidence of Murdoch. And then you have 12 to 14 years later these eyewitnesses now making these tentative statements, oh, yeah, it looks like him, it could have been him. I mean, we're talking at least 12 years after the fact. I mean, there's a lot written about the weight that should be given to that sort of thing. Well, I think that the eyewitness identification, one of the witnesses was positive in their identification. I believe that was a bar patron, Edward Snow. He was positive that Murdoch was in the bar with the rifle. So the other two eyewitnesses, I believe one was the bartender and another one was another patron of the bar, they were, as this Court has indicated, not as certain as Mr. Snow was. But they did have, you know, a good level of certainty as to Murdoch's presence in the bar. Did he say Murdoch was in there? Didn't he say he looked like the guy with the rifle? No. I think Mr. Snow argued that he was positive regarding his identification of Murdoch being in the bar with a rifle. I don't believe he said he saw Mr. Murdoch shoot anybody. He was positive about that. But Mr. Murdoch was in the bar with a rifle. And this happened in this crime. Had he picked him out of the photo lineup before? I think he picked him out of a lot of, yeah, I think it was a photo lineup. Right after the crime? No, after the investigation. After 12 years. Yeah, after 10 years. Well, and it isn't true also that Ms. Spence, Diane, said, though she couldn't identify him in the photo array, she said looking at him, she would know him anywhere because of his eyes.  Beyond a shadow of a doubt, it was him. Isn't that true? Yes. Not in a photo. She couldn't get it done. But when she looked in his eyes, having looked right down the barrel of the rifle, it was quite different. Right. And her eyewitness or her account was done through a live lineup, I believe. When was that? That was also 10 years after the crime. Because what had happened was that the fingerprint that matched DiNardo was not, the system at that time was not automated. That's why it took 10 years. But, you know, as Judge Smith has indicated, looking down the barrel of a shotgun, someone, we would argue, is not going to forget the eyes of someone who's doing that to them. It's definitely something to be weighed by the jury in light of all of the evidence, including the impeachment evidence. And in this case, the jury did weigh that, and they found the petitioner guilty. But the judge thought it wasn't enough, that the prosecution was going to lose. He did say that at the time, on the record, when he reviewed the witnesses. That's a fact, isn't it? I think that the, as incited by the court during this argument, that a trial court stated that, you know, that the case, I believe, was not going well for the prosecution and that they needed to get DiNardo's testimony. I don't know if he said that they were going to lose without it. Well, that's what usually it means when I say not going well for the prosecution. It's not like, you know, you're looking bad. I think it means you're going to lose. But anyway, thank you. Time's up. You've got about two minutes left. I want to address some points that were raised. First of all, in the petition that was originally filed, Claim 7, petitioner stated that in this case, the trial judge was not fair or impartial, and as a result of becoming a party of the illegal agreement with the accomplice, he acquired an interest to make sure the petitioner was found guilty. That was Claim 7, raised in the petition, addressed by the magistrate, and denied. So absolutely, that was raised. Must always be remembered, the state entered into an illegal sentence with Mr. DiNardo. There is no state law allowing, once somebody has been convicted of a murder, to set aside a jury verdict and give them another sentence.  That was raised. So that's got to be understood. Also, Carol Halburton was not a reliable witness. She was shown photos right after the scene. She picked somebody else out as the shooter. Shown Mr. Murdoch, did not pick him out, picked somebody else out. That's not a reliable witness, and she failed to identify the petitioner at a live lineup prior to the trial. Mr. Snow. Mr. Snow has a ---- So this witness not only saw the photo, she actually saw him in the lineup? Yes. And failed to pick him out. And that's on ---- that's cited in my reply brief, filed actually in Murdoch 2. And I have him, citations on page 13 of my reply brief. Mr. Snow. Mr. Snow testified that it was the petitioner who jumped over the bar. We know that's not true. It was Mr. DiNardo who jumped over the bar, because the person who jumped over the bar went to the cash register, leaving his fingerprint, Mr. DiNardo. That is not a reliable witness. And we also must remember that Mr. DiNardo was identified as stabbing one of the patrons. Of course, Mr. DiNardo had convenient memory loss when asked that question. He doesn't remember any stabbing occurring at the bar. Did you happen to find the citation? Yes, I did. Asked before about where cross was limited? Not where cross was limited. I do not have that. I might ---- I want to look at that. I couldn't find any limitation. All I found about this was maybe the lawyer was scared away from it, because the at 76 and thereabouts, DiNardo testifies about how he felt intimidated by Murdoch, who was afraid of getting murdered in prison. I do not feel it would be wise for me to say the lawyer was scared away, the thought was in my mind. Okay? But nevertheless, as far as the discovery issue aspect of it, that I have raised on page 1 through 8 of my excerpts of the record that I have on Murdoch 2, as far as specifically asking your cross-examination question, no, I do not have a citation. I will look, if I can, and see if I can find something, I wish I did. How can we decide that there was an unconstitutional interference with cross if there was no interference with cross? It looks as though all we've got, the sum total of the case, is he didn't get to see the letter with his own eyes, even though he had been told something of its substance by the prosecutor. You're second-guessing him that he should have gone further when he doesn't know everything's in the letter, and that's the whole point. I'm not second-guessing anything. Okay. I'm just trying to find out what the basis is in the record for saying that it's cross-examination. The court stopped him from seeing the letter for him to say that I have something to make a strike of the testimony. He doesn't know. Well, your position is he doesn't have the letter, he doesn't know what's in it, and he doesn't have the letter, so he can't show it to the jury. Right. And show them what is to be allowed. You've got to keep those two points in mind. Okay. And I'm trying to. And the most important part of the letter is the statement that I've never committed any crime with Murdoch. All the other inconsistencies, the coercion doesn't make a difference. It's that statement. It was basically all I wanted to say, except real quickly. I think the State, with all that we've said. You're well over your time. All right. Then if I can't say more, I'm single. You have one more sentence to say. Go ahead. If you have Murdoch and Donato together making the letter, then how do you have an attorney-client privilege? They can't have it both ways. Thank you. Case is arguably submitted. We are adjourned.
judges: Kozinski, Kleinfeld, Tashima, Thomas, Silverman